May it please the court. My name is Noah Blackman. I am counsel for the six involved officer defendants, the appellants. At this point, I'd like to reserve about three minutes for rebuttal time. This is a unique arrest related case. We have a prolonged struggle of numerous officers involved with this individual who was subject to arrest. The court has determined each of these officers were involved at different times, used different force options, and importantly, this occurred in an enclosed space in this enclosed kitchen area. So we believe that this mandates qualified immunity for these six officers under either of the two prongs. Really, there's two distinct events the court should be aware of here. We have the arrest incident and then the post handcuffing treatment by two of the officers. So really, the timing is key in terms of the court's analysis. I believe that the court, your honors, believe that there's jurisdiction to hear this appeal. So unless any of your honors have a question about that, I'm going to move on to the substance. I do have one question about that and insofar as some of your clients' claims are, you know, I wasn't really involved in very much of this. Isn't that the sort of factual challenge that Johnson against Jones says we can't consider at this stage? I don't believe that's exactly how the state of the record is, your honor, for each of the officers. It's rather undisputed as to the involvement of each of the officers. I can go through that in detail as well. So even taking the plaintiff's version of events, excuse me, the evidence in their favor that is disputed, let's say, but reviewing the incident from the perspective of the officers, we still believe that there's qualified immunity. We still believe that the court has jurisdiction to hear this because this turns on purely legal issues. The key facts, for your honors, are this gentleman was first seized in the kitchen is the first time officers were able to put their hands on him, stop his forward movement, if you will. So really the focus of the case has to do with the events in the kitchen. We have the first two officers follow him into the kitchen after numerous commands for him to stop, those type of things. And then there's a struggle with officers Mejia and Glasper in the kitchen. That lasts for approximately 75 seconds until the next officer then is called in. When Officer Waite gets in there, this is when Officer Waite sees Mr. Martinez has only one handcuff on. And the state of the record is before Waite gets in there, a corroborant was tempted and appeared to work because Mr. Martinez was snoring. They were able to get one handcuff on him before he awoke and continued to struggle. I don't know about my colleagues, but I've watched the videos. And suppose that we conclude that a jury could find, based on the videos, that there is some point, one might debate where, but there is some point in the sequence of events after which Mr. Martinez was not offering significant resistance. And therefore the continued application of that before or after that point was unreasonable. If a reasonable jury could find that, why doesn't that mean that you lose, at least at this stage? At this stage, Your Honor, the video shows that and the district court found that these officers were just trying to handcuff and arrest this resistant subject. But they weren't just trying to handcuff him, and they were also striking him repeatedly. I mean, there's significant application of force beyond just handcuffing. Correct, Your Honor, but because this gentleman was subject to arrest, officers under Graham are entitled to use some force to effect that arrest. So some force, he had 16 broken ribs, broken sternum, broken Adam's apple, and numerous other injuries. That sounds like a little more than some force, doesn't it? Well, there was definitely force and we've admitted all that. So the problem with the district court's reasoning is that they lumped all the officers in as integral participants and did not do the proper Fourth Amendment analysis as to evaluating the force when each of those officers entered in the kitchen, if you will. So, for example, the plaintiffs don't even contend that Officer Waite used any unreasonable force. You can see that in their chart. They don't have him doing any force. He admitted he came in, he tried to hold on to the open handcuff, because that can be used as a deadly weapon, while other officers are trying to corral this gentleman. But if Officer Waite's holding the handcuff and restraining his arms, as others of his stomp and choked him, isn't that an integral part of the excessive force? Well, just like the Ninth Circuit just indicated in the DelVal case, and going back to the Boyd case, integral participant only attaches that the officer's aware of the other's decision to violate the law, did not object and participate in some meaningful way. So I understand, Judge Reyes, you're talking about the issue about whether Mejia choked Mr. Martinez. Officer Waite is not aware of the status of what is occurring up at the head of this gentleman, whether there's pressure being applied to his neck, whether Officer Mejia is only holding down his upper body. How is that not a jury question? What Waite was aware of? I mean, he's in the room. Well, number one, it's not a jury question if he's not aware of what's occurring. So we believe that court cut a lot of corners, the district court, in lumping all the officers together. And then, I think, to your Honor's point, it would go a little bit more towards the qualified immunity argument. Whether Waite knew that a carotid was being attempted or not, as the white Supreme Court case said, Officer Waite is entitled to assume that the procedures and the tactics of breathing room for his limited involvement in trying to arrest and handcuff this gentleman. So I think, to the court's point, that would go more towards the qualified immunity question that we will be addressing here. Well, wasn't Waite handcuffing and straining his arms while others punched him? Yes. Well, in short, Officer Waite came in. And they stomped on him while he was holding his hands back? I don't believe that's the state of the record, Your Honor. And we can look at the various videos. But he went in there. He tried to get a hold of the handcuff. He tried to get a second pair of handcuffs out to get this gentleman handcuffed. Yes. Officer Glasper is still giving him commands to stop resisting, to give up his hands. And Officer Glasper is, at some point, striking him with approved law enforcement tactics. But Officer Waite cannot be imputed Officer Glasper's force simply because Officer Waite is assisting in trying to handcuff this arrestable subject. That's where I think the district court really failed on this record. Are we supposed to assume that Officer Waite had no idea that Officer Mejia was choking him while he was doing this? Well, the court uses the term choking. We don't. Officer Waite says it appeared that he may have been attempting a carotid, but he didn't know. And it's undisputed on the record. Is that a question of fact for the jury to decide what he could have figured out and understood during this encounter? Well, if we assume that's correct, that Officer Waite believed that Officer Mejia was attempting a carotid, let's say, then we can still assume that fact for the purposes of this and still provide Officer Waite with qualified immunity because there's no case that was cited by the district court or really the plaintiffs that would have put Officer Waite and Officer in his position at that point in time on sufficient notice that he can't assist in trying to handcuff this gentleman while other officers are doing the same thing. And I think when you take the analysis further, your honors, with the last three arriving officers, they are arriving, it's undisputed, about two minutes and 15 seconds into the struggle, really about the last 20 seconds of the struggle, essentially the last 13 percent of the struggle. And those officers don't know what occurred in the prior two minutes and 15 seconds. They get in there. They know that it's been reported on the radio there was a physical in this house. It was reported a second time that there was a physical struggle. They get in there and they see these three officers still do not have this large gentleman under control. So they are, at that point, are entitled to use force options. And indeed, the combination of force from those three officers, Officer Palma simply grabbing and trying to handcuff this gentleman. Elmore comes in, uses commands and also does several distraction strikes. And Burhan decisively uses the taser, striking Mr. Martinez in the left hip. And the combination of that force with those officers and the other officers were finally able to get this gentleman on his stomach and finally get him handcuffed. There's no evidence in this record that after this gentleman was handcuffed, there was any gratuitous force, other force, other than Palma and Elmore trying to maintain some control over this previously aggressively combated decedent. But which they did by pulling him down and putting some amount of weight on him, right? I mean, my point being that that is a, or at least a jury could conclude that that was a very significant and at that point unjustified continued application of force. As to Palma and Elmore, I think under the Fourth Amendment issue, a jury could. However, this is a different scenario than really any case cited by the district court or the plaintiff. You know, the cases cited Drummond was entirely distinguishable, had to do with force used on a gentleman who was not a criminal suspect. He was simply to be placed in custody so he can get a mental health evaluation, for example. I agree, Your Honor. You don't need a case directly on point, but if you don't have anything on point, then you really need a robust consensus of cases. Because if you look at the district court's order in this situation, there's really no guidance to any of these officers as to what case strict, or what consensus of cases clearly outlawed their behavior beyond debate. When we look at this in the context of these officers trying to handcuff this large gentleman who's impervious to these pain control techniques, he's lashing out at officers, he's biting an officer, he's kicking an officer, and as you can see on the video, he's not allowing himself to be handcuffed. So all the force led up to the handcuffing, and then really the force tactics stopped, and I know we have sort of the second part of the analysis then. Counsel, you're under two minutes. Do you want to reserve the Good morning, Your Honors. May it please the court. I want to address the jurisdictional issue first, and I think it is accurate that a number of officers claim basically I wasn't involved. Let's take Officer Waite, for instance. That's basically what he's saying. They're saying that I didn't do, I didn't use any force, and I shouldn't be held to account for what happened in my presence as an integral participant. And so I do think that that falls within the jurisdictional issue. Another jurisdictional issue is the defendant's basically waiver of the qualified immunity defense by failing to assume the facts in the light most favorable to the plaintiff. Throughout their brief, they assume the facts in the light most favorable to themselves. They even claim that there's no evidence of proximate cause of death, and we've shown in our brief that there's a great deal of evidence in the record about that, for example. And finally, the defendants basically admit that the integral participation standard is a standard, is a doctrine of the Ninth Circuit. There's nothing that's not clearly established about that. So they don't like it, but it is clearly established law, and the plaintiffs here have been able to show that these facts meet that clearly established legal standard. Now, one of the things that, you know, you have to look at any use of force under the Graham analysis, Graham versus Connor. And one of the first things you look at is, what was the severity of the crime at issue? And this particular crime, as any reasonable officer would know, was one of the lowest possible crimes. It was an infraction, a fix-it ticket for having a two-week-old expired registration on his car. And then he fled for them for about 200 yards, according to officer weight. It wasn't much of a flight, but technically that could have been a misdemeanor, violation of Vehicle Code 2800. Then he ran from them. That technically could have been a misdemeanor, maybe a misdemeanor 148 under California law. So those are all the universe of crimes that he could have been arrested for. When he ran back into the house from which they saw him come originally, the officers had no legal basis to go into that house. So a jury can find that their whole use of force, their whole attempt to arrest him was tainted from the beginning, because you can't engage in hot pursuit for a misdemeanor. And that was all they had. This is the admission of at least two of the defendants. We had nothing more than misdemeanors. And even their police chief, after review, said, I don't believe anything rose to the level of a felony. So they shouldn't have even been in that house in the first place. And I think that the illegality of the entry of the and their uses of force were legitimate. So now going on to the force, the defendants would like to suggest that the integral participation standard requires something more than just fundamental involvement or meaningful involvement, as the courts have said, because they found an unpublished case called Delval, which seems to suggest that the Boyd case required more than that. For instance, that the officers were aware that force was about to be used, were present, could have stopped it, and failed to stop it. And Boyd doesn't say that. Boyd was describing, under the facts of that particular case, why those officers' involvement was meaningful or had fundamental involvement. It doesn't mean that in every case you have to show that they had advance notice of the plan to use force. That just happens to be the facts of the Boyd case. The plaintiffs clearly meet the integral participation standard by showing that all of these officers were fundamentally involved. And the Lawley case is a really good application of that standard, because that was basically a group of officers involved in a collective use of force against one person. And in that situation, the court said that basically any officer who put physical hands on the person had integral participation in those uses of force. Good night. Is that true? Could you address, I mean, what about taking Officer Waite in particular? He's in the garage for a lot of this and doesn't see it, and then comes in and puts handcuffs on, and then, if I remember correctly, doesn't strike Mr. Martinez after that. So, is that enough to make him an integral participant in the entire course of events? He's only an integral participant when he's there. So, we're not saying he should be held accountable for what happened while he was in the garage. So, that's about the first 70 seconds or so of what happened in the kitchen. But when he goes into the kitchen, then he sees what's happening. And I would direct the court to the excerpts of record pages 617 and 618. Those are at the same time in the same screenshot from that officer's camera, putting him in a choke hold. That officer's camera is Officer Waite. That's exactly what Officer Waite saw as he was holding the hand. So, it's one thing to hold an arrestee's wrist to try to arrest him when nothing else is happening. But we have to look at this under the totality of the circumstances, as our Supreme Court has instructed us over and over again. And if you look at all those circumstances here, you have to look at what else is going on. What other forces are being used? How many officers are being involved in this situation? And what Officer Waite must have seen, as a jury can find, was that at that moment, Officer Mejia was putting him in a choke hold. Officer Glasper was repeatedly striking him with his hands, his elbows, his knees, and as Judge Reyes pointed out, a stomp, as we also see a picture of in the screenshots. And he's holding him down while this happens from other officers. So, that not only makes him an integral participant, but it also violates the well-known standard in this circuit and throughout the country, that officers must intervene when they see other officers use excessive force in front of them. He had an opportunity to intervene. He could have done so verbally. He could have done so physically. He made no attempt to intervene. So, Officer Waite's liability is multifaceted for many reasons. And he's the least responsible of any of them. But even he should not get off it. It's very clear. There's many questions of fact from which a jury can hold him responsible. In terms of the compression asphyxia, that's a term that the Ninth Circuit used in the Drummond case when they explained exactly the process that's happening here. And we're not only relying on the Drummond case for what officers Palma and Elmore did to compress Mr. Martinez after he was handcuffed and motionless. But there's many cases that have relied on Drummond that have specifically said that Drummond made the law clearly established as of the time of Drummond. So, in the plaintiff's response brief, page 54, footnote 5, we list about eight or nine of those Ninth Circuit cases. Many of them are unpublished, but it's still controlling law. I think that we have to follow the requirement to look at these uses of force, each of them, under traditional Ninth Circuit and Supreme Court standards. That is the Graham analysis. So, we start with the seriousness of the crime. As I've said, it was not a very serious crime. We next look to the level of resistance. The Ninth Circuit has is resistance that justifies a high level of force. There's a continuum of resistance. And basically, when the resistance is not particularly bellicose, as the Ninth Circuit has said, then a significant level of force that may cause an injury is not appropriate. The case that started, it said that first was the Anban case, Smith v. Hammett. It's been repeated multiple times. There's another case called Nelson v. City of Davis, which uses the same terminology. Resistance that's not particularly bellicose cannot justify a serious use of force that may cause injuries. Now, you can argue that some of the time, at least in the beginning in the kitchen, it looked like Mr. Martinez was trying not to be handcuffed pretty hard. But the defendants admit he never attempted to punch or strike or kick any of them. There's no evidence of that in the videos. So, there was no assault of behavior by Mr. Martinez. He was trying to get away. And then, he was put into the chokehold. And a jury can find, as the district court found, that there was in fact a chokehold done in violation of this department's policy. Once the chokehold was done, Mejia agrees it's normal. It's reasonable. They're trained. People will squirm. They'll struggle to try to breathe. That's normal. So, the jury could find that much of Mr. Martinez's struggling was provoked by the conduct of the officers, the actual excessive force of the officers. Also, officers are also trained about California state law, which says all people in the state must submit to an arrest unless excessive force is used. And then, the right to self-defense kicks in. And an individual still has the right to defend themselves from excessive force, which a jury can also find was the explanation for any struggling they might have seen by Mr. Martinez. As Judge Miller points out, eventually, it's clear in the videos that Mr. Martinez is no handcuffed. He was basically not moving anymore. There's multiple officers around him. Right around that time, we see on the video, Officer Elmore punching seven or eight times shortly after Burr had just ran up and chased him without even assessing the situation. Around that time, Mr. Martinez was pretty much motionless. And so, any more use of force at that point was any force used can be considered excessive force. And that was a situation from some certain point in the video when all five officers were present until the very end of the encounter, when they finally got up off of him. I'd like to answer any questions that the court may have at this point. That's fine. Then, I'll just conclude. When I think about what happened to Beto Martinez, I think about what happened to Eric Garner and George Floyd and many others. And for each of them, as police officers beat and crushed the breath from them, their last words were, I can't breathe. Now, some of those very officers are here literally asking for you to give them some breathing room if they may have violated Beto's rights when they killed him. Defendant's violations of Beto Martinez's rights were clearly established, providing fair notice to any reasonable officer, in this case, to go to trial. Thank you. Thank you, counsel. We have just under two minutes left. I'll cede my time. Thank you, your honor. Number one, this was not an infraction that led to this gentleman's death, for example, or the struggle. There was escalating behavior by him fleeing. And then, there was evidence in the record of battery, of kicking a glass burner, biting, and those type of things. So, by the time the struggle is really getting going in the kitchen, there's felony offenses involved. And really, your honors, this must be judged from the perspective of the officers. And we can see that these officers are being forced to make split-second decisions. Officer Glasper is forced to use force, stop, reassess. He still can't get compliance. Same thing with the three other arriving officers. And really, the main criticism here to the district court's analysis is the court really failed to do an officer-by-officer, force-by-force analysis, even though we can compartmentalize that in this case. Do you concede the Ninth Circuit's adopted the integral participant rule? The Ninth Circuit has applied that mostly in the search context and void sites of those cases. Blankenhorn is a totally distinguishable type of integral participant case where the court mentions it in passing in a footnote. But what I wanted to impress upon the court is that there are several Ninth Circuit decisions that do the officer-by-officer analysis. Most recently, the Tua Malamalo case, where the court said that the officer who applied the was entitled to that. And similarly, in the Abstin case, which is unpublished, but that's a case that had to do with the post-handcuffing positioning. One of the officers who was involved in that also tased the gentleman several times before they got him into custody, and that officer was provided with qualified immunity. So the qualified immunity analysis is an officer-by-officer individualized analysis, not a group analysis. The court really did not do that here. So you're saying that the Ninth Circuit has not adopted the integral participant rule for a situation like this? The court has applied it in some select, distinguishable, struggle-related cases, but has mostly applied it in the search context when officers know about a certain tactic, for example, the flashbang from Boyd, do not object to it, and then go along and assist. The integral participant doctrine does not fit well at all in a case like this, where we have different officers basically trying to handcuff this large gentleman who's resisting. Qualified immunity...I'm going to conclude, Your Honor, that's what Your Honor was going to say. Qualified immunity is supposed to provide officers with breathing room when they're involved in very difficult situations, which is what the officers were here. They had split seconds to determine what type of force option to use, and in fact, it took six officers and more than two and a half minutes to get this gentleman in handcuffs. No significant force used on him after that. We believe the district court failed to do the proper analysis under both prongs, and that the law is not clearly established as to each of these officers, as to each of their involvement when they arrived on the scene, and we're asking this court to take a look at those issues, re-look at the videos, look at the source videos of each of the officers, and reverse the district court. Okay. Thank you, counsel. We thank both counsel for their helpful arguments this morning, and the case just argued is submitted. Thank you, Your Honor.
judges: Miller, Hunsaker, Rayes